## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF PENNSYLVANIA

IN RE: ARTHUR DOUGLAS STEWART
and CHRISTINE ANN STEWART,
        Debtors,

ARTHUR DOUGLAS STEWART and
CHRISTINE ANN STEWART,
        Appellants,

        vs.

CHASE BANK,
ARCHER LAND SETTLEMENT
SERVICES, and
RHONDA J. WINNECOUR, CHAPTER 13
TRUSTEE,
        Appellees.

Civil Action No. 12-1243

(Appeal related to Bankruptcy Case No. 10-26939 and Adversary No. 10-2654)

## <u>MEMORANDUM OPINION AND ORDER</u>

CONTI, District Judge.

      Pending before the court is an appeal filed by appellants-debtors Arthur Douglas Stewart and Christine Ann Stewart ("Debtors") (ECF No. 10). Appellee JPMorgan Chase Bank ("JPMorgan") filed a brief (ECF No. 15), and appellee/trustee Rhonda J. Winnecour ("Trustee") filed a brief in opposition (ECF No. 17).  Debtors seek review of the May 21, 2012 order of the bankruptcy court granting JPMorgan's motion to dismiss Debtors' complaint in Adversary No. 10-2654 and granting the Trustee's motion to strike Debtors' motion for derivative standing to exercise trustee's powers under 11 U.S.C. §§ 544, 547, 548 nunc pro tunc (the "Motion for Derivative Standing"). The bankruptcy court, among other things, determined that it lacked subject-matter jurisdiction over one of Debtors' claims under the <u>Rooker</u>-<u>Feldman</u> doctrine and that certain other claims were barred because Debtors failed to exhaust requisite administrative

remedies under the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"), 12 U.S.C. § 1811. Debtors do not contest the bankruptcy court's grant of the Trustee's motion to strike the Motion for Derivative Standing.

Debtors make two arguments in support of their appeal: first, the Rooker-Feldman doctrine does not bar the Debtors' request for rescission of a mortgage under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1635; and second, they were not required to exhaust the other claims at issue because the non-Article III courts of the Federal Deposit Insurance Corporation ("FDIC") do not constitutionally have the authority to hear the claims at issue.[1] (ECF No. 10 at 5-8.)

After considering the record on appeal and the briefs of Debtors, JPMorgan, and the Trustee, the May 21, 2012 order of the bankruptcy court will be affirmed because (1) JPMorgan's motion to dismiss was properly granted, and (2) Debtors' motion for derivative standing was properly denied.

## I.      Factual Background

The following factual allegations were taken as true by the bankruptcy court and this court in evaluating the motion to dismiss filed by JPMorgan. (ECF No. 1-2).  Debtors, in response to a flyer, completed a telephone application with Ace Mortgage Holdings, LLC ("Ace") for a mortgage refinancing on their home (the "Property"). In re Stewart, 473 B.R. 612, 617 (Bankr. W.D. Pa. 2012).  Ace allegedly guaranteed Debtors a monthly payment which did not include escrow amounts for taxes and homeowners insurance. Id.  Ace used Arthur Trexler ("Trexler") doing business as Norwin Appraisal Services to appraise the Property. Id. Because

---

[1] Debtors do not contest the other rulings made by the bankruptcy court with respect to the Motion for Derivative Standing and the dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) and those rulings will not be addressed by this court. See Sw. Pa. Growth Alliance v. Browner, 121 F.3d 106, 122 (3d Cir. 1997).

Trexler's initial appraisal of $345,000 was not high enough to complete the refinancing, Ace employees and agents allegedly coerced Trexler into increasing his appraisal to $363,000. Id. Debtors and Ace closed on the refinancing of Debtors' original mortgage on October 26, 2007, which allowed Debtors to pay off their existing mortgage on the Property. Id.  A promissory note showing a loan amount of $352,000 was issued, and Washington Mutual Bank ("WAMU") was named the originator of the loan. Id.  Debtors claim to have protested to Ace that they could not afford the payments under the refinancing, but were allegedly told by Ace that they could refinance again in the future. Id.

Archer Land Settlement Services ("Archer") prepared a HUD-1 Settlement Statement which included a yield spread premium of $10,563.13 in the total amount financed, and did not disclose the private mortgage insurance cost. Id. at 618. The yield spread premium was allegedly given to Ace as a kickback for completing the refinancing. Id.  The HUD-1 form given to Debtors was allegedly different from the HUD-1 given to WAMU. Id.

WAMU was placed into receivership by the FDIC on September 25, 2008 by an order of the Office of Thrift Supervision[2]. Id. at 618.  JPMorgan purchased WAMU assets via a Purchase and Assumption Agreement (the "Purchase Agreement"), which included the promissory note secured by the Property[3]. Id.

Debtors defaulted on their loan which was secured by a mortgage on the Property held by JPMorgan and the bank obtained a default judgment in mortgage foreclosure against Debtors on August 6, 2010 in the Court of Common Pleas of Westmoreland County, Pennsylvania[4]. Id.  On

---

[2] Debtors consented to judicial notice of the receivership order of the Office of Thrift Supervision. (ECF No. 16-3 at 10.)

[3] Debtors consented to judicial notice of the Purchase Agreement between the FDIC and JPMorgan. (ECF No. 16-3 at 13.)

[4] Debtors consented to judicial notice of the default foreclosure judgment entered by the state court against Debtors. (ECF No. 16-4 at 2.)

August 8, 2010, Debtors sent a rescission request to JPMorgan, which they allege constituted a "qualified written request" ("QWR") under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e).[5] Id.  JPMorgan refused to accept the rescission request in a letter dated August 18, 2010, and returned documents to Debtors in response to the alleged QWR. Id.  On September 29, 2010, Debtors voluntarily filed for Chapter 13 bankruptcy relief and claimed the value of the Property to be $225,000, listing JPMorgan as the holder of an unsecured claim in the amount of $347,496. Id.  JPMorgan filed a proof of claim in the amount of $404,123.53. Id.

Debtors' initial complaint alleged eight counts against JPMorgan, Archer, and the Trustee,  including 1) violations of the TILA by JPMorgan and "other unknown entities" (Count I); 2) violations of the RESPA (Count II); 3) violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692  ("FDCPA") (Count III);[6] 4) a preference claim pursuant to 11 U.S.C. §544(a)(3), seeking to exercise the avoidance powers of the Trustee to avoid JPMorgan's unperfected security interest in the Property (Count IV); 5) violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. §201 ("UTPCPL"), by JPMorgan (Count V); 6) a breach of the implied covenant of fair dealing by JPMorgan (Count VI); 7) a civil conspiracy and fraud charge against JPMorgan and Archer (Count VII); and 8) violations of the UTPCPL catchall provision by Archer (Count VIII). Id. at 619.

The issues raised in this appeal appear to relate only to Count I, the alleged violations of the TILA by JPMorgan for which Debtors seek damages and rescission of the mortgage. It was

---

[5] A qualified written request is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer that "(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605 (e)(1)(B).
[6] After the instant appeal was filed, the parties entered into a full and final settlement of the RESPA and FDCPA claims.  These claims are no longer subject to review in light of the settlement.

difficult discern exactly what claims for damages Debtors were arguing were not barred by the failure to exhaust under the FIRREA. The bankruptcy court explicitly held that the claim for rescission of the mortgage under the TILA was not barred under the failure to exhaust requirements because that claim was an affirmative defense to JPMorgan's claim filed in Debtors' bankruptcy case. Since the RESPA and FDCPA claims were settled and the denial of the Motion for Derivative Standing was not appealed, the only claims remaining that would be subject to the failure to exhaust requirement, which is the subject of this appeal, appears to be the TILA claims for damages.

## II.      Procedural History

Debtors filed the initial complaint against JPMorgan, Archer, and "other unknown entities or persons" on December 24, 2010, in the United States Bankruptcy Court for the Western District of Pennsylvania, seeking damages for violations of multiple statutes and seeking the rescission of the refinanced mortgage.[7] Id.   JPMorgan filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Id. at 619.  Debtors filed the Motion for Derivative Standing on July 22, 2011, seeking to obtain Chapter 13 Trustee avoidance powers. Id.  The bankruptcy court in its May 21, 2012 order granted the motion to dismiss and struck the Motion for Derivative Standing. Id. at 641.  A notice of appeal from the bankruptcy court's decision was filed on September 27, 2012. (ECF No. 1.)

## III.     Standard of Review

This court has jurisdiction over the appeal from the May 21, 2012 order pursuant to 28 U.S.C. § 158(a).  A district court applies a clearly erroneous standard to the bankruptcy court's findings of fact and a plenary standard to issues of law.  In re Sharon Steel Corp., 871 F.2d 1217,

---

[7] Debtors did not serve Archer with the initial complaint and stated that they intended to dismiss Archer from the proceedings. (ECF No. 15 at 3). To the extent Debtors make an argument with respect to Archer, it will not be considered a party to this appeal.

1222 (3d Cir. 1989).  Mixed questions of law and fact are reviewed through applying the

appropriate standard to each component. Id.

## IV.    Discussion

Debtors argue that the bankruptcy court erred in concluding that the Rooker-Feldman

doctrine bars rescission of the mortgage under the TILA, because bankruptcy courts have

original jurisdiction to hear all bankruptcy cases.  They also assert that the precedential decisions

by the Third Circuit Court of Appeals in Madera v. Ameriquest Mortgage Co. (In re Madera),

586 F.3d 228 (3d Cir. 2009), and Great Western Mining and Mineral Co. v. Fox Rothschild,

LLP., 615 F.3d 159 (3d Cir. 2010), were wrongly decided and that even if these decisions are

correct, rescission is not barred under the four-part test set forth in Great Western.  Finally,

Debtors contend that the FIRREA does not bar the bankruptcy court from exercising jurisdiction

over their claims for damages under the TILA because the United States Supreme Court decision

in Stern v. Marshall, 131 S. Ct. 2594, 2600 (2011), prevents non-Article III courts—like the

FDIC claims review process mandated under FIRREA—from hearing a private rights claim.

That argument likewise arguably applies to the bankruptcy courts. Even if Stern would preclude

the bankruptcy court from entering a final order, the district court may consider the bankruptcy

court order as a report and recommendation and review it de novo. See Carr v. Loeser (In re Int'l

Auction and Appraisal Servs. LLC), 493 B.R. 460, 466 (Bankr. M.D. Pa. 2013). If the order and

accompanying opinion of the bankruptcy court need to be considered a report and

recommendation, this court, having reviewed the issues raised de novo, will adopt them as the

opinion and order of this court.  In any event even if the bankruptcy court has the authority to

enter a final order in this case, the issues before this court involve questions of law which are

subject to plenary, i.e. de novo, review. In whatever way Stern is applicable to the bankruptcy

court's decision, the standard of review in this case is de novo review of that decision. After de novo review, the court concludes the bankruptcy court's holding that the <u>Rooker</u>-<u>Feldman</u> doctrine barred the court from granting the rescission was correct, because it is based upon the proper application of decisions of the Supreme Court and the Court of Appeals for the Third Circuit. The dismissal of all Debtors' claims for damages under the TILA was also proper and the FIRREA's claims review process does not violate the holding in <u>Stern</u>. Each of the issues raised on appeal by Debtors will be addressed.

### A.      **<u>Rooker</u>-<u>Feldman</u> Doctrine**

Debtors present three separate arguments for why the <u>Rooker</u>-<u>Feldman</u> doctrine does not apply to their claim under the TILA for rescission of the mortgage in issue: first, the plain language of the TILA explicitly allows a debtor to rescind a mortgage after the entry of a state court default judgment and thus an independent claim existed, giving the bankruptcy court original jurisdiction to hear the rescission claim; second, the decisions by the Court of Appeals for the Third Circuit in <u>Great Western</u> and <u>Madera</u> are incorrectly decided and are not applicable to the present case; and third, even if <u>Great Western</u> is correctly decided, it does not bar Debtors' request for rescission.

### 1.      **<u>Rooker</u>-<u>Feldman</u> Overview**

Under the <u>Rooker</u>-<u>Feldman</u> doctrine, a federal district court is barred from exercising jurisdiction when an issue raised in a federal suit is commenced after a final state court judgment was rendered on the same issue raised in the federal suit. <u>Great Western</u>, 615 F.3d at 164.  The doctrine is derived from two Supreme Court decisions: <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413, 44 (1923), and <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462, 103 (1983).  The Supreme Court has held that the <u>Rooker</u>-<u>Feldman</u> doctrine "is confined to cases of

the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).

The decision in Exxon Mobil purportedly narrowed the scope of the Rooker-Feldman doctrine by holding that the "district court erred by applying the Rooker–Feldman doctrine 'beyond the contours of the Rooker and Feldman cases,' because the plaintiff's action in the district court did not complain of injuries 'caused by the state court judgment." Turner v. Crawford Square Apartments III, L.P., 449 F.3d 542, 547 (3d Cir. 2006); see Exxon Mobil, 544 U.S. at 284.  In Exxon Mobil, Saudi Basic Industries Corporation ("SABIC") sued Exxon Mobil Corp. ("Exxon") in a Delaware state court and Exxon countered by suing SABIC in a federal district court in New Jersey. Id. at 289.  Exxon's counterclaims in the Delaware suit were identical to Exxon's claims in the federal suit. Id.  After Exxon won in the state court, SABIC moved to dismiss the federal suit claiming sovereign immunity and filed an interlocutory appeal that was heard eight months after the jury verdict in the state suit was entered in favor of Exxon. Id. at 289-90.  The Supreme Court held that if a plaintiff "present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party ... then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." Id. at 293.

The decision in Exxon Mobil was refined in Skinner v. Switzer, 131 S. Ct.1289, 1289 (2011), where the Court stated that while state court final decisions are not reviewable by lower federal courts, the statutes and regulations governing those decisions are reviewable. Skinner, 131 S. Ct. at 1298.   In Skinner, the Court noted that whether the same or related question had

previously been aired between the parties in state court will not necessarily impede federal jurisdiction over the question. Id. at 1297; see Turner, 449 F.3d at 547 (finding that even though the plaintiff's district court complaint overlapped her adjudicated state court claim and was based on the same facts, this overlap did not mean the Rooker-Feldman doctrine was applicable).

Debtors contend that Madera and Great Western were wrongly decided as they do not address whether the district court was granted original jurisdiction to decide rescission claims in the first place. According to Debtors, the tests used in those decisions fail to address the alleged threshold test of the Rooker-Feldman doctrine: i.e. whether an independent claim in which the federal district court has original jurisdiction is presented. (ECF No. 10 at 16). Debtors draw this assumption from the decisions in Exxon Mobil and Skinner, which they argue stand for the proposition that district courts must first determine whether Congress granted original jurisdiction before deciding whether the Rooker-Feldman doctrine applies. As discussed below, Great Western's rationale is binding on this court and incorporates the independent claim language used in Exxon Mobil.

### 2.     **Great Western is Binding**

Debtors claim that the bankruptcy court erred in relying upon the Third Circuit Court of Appeals' decisions in Madera and Great Western because they were wrongly decided and do not correctly apply the Supreme Court's decision in Exxon Mobil. For Great Western to have wrongly been decided, the court of appeals must have failed to consider whether an independent claim was presented when determining whether the Rooker-Feldman doctrine barred the underlying claim. This court is bound by precedential decisions of the Court of Appeals for the Third Circuit and the Supreme Court and cannot, even if it wanted to, overrule binding decisions of those courts.

In Great Western, the plaintiff, Great Western Mining & Mineral Co. ("Great Western"), alleged that its loss in state court was due to a conspiracy between the defendant and certain members of the judiciary. Great Western, 615 F.3d at 161.  The court held that Great Western was not complaining about injuries caused by the state court judgment and inviting the court of appeals to review and reject the state court judgment, but was asserting an independent constitutional claim that Great Western's right to be heard in an impartial forum was violated. Id. The court set forth a four-part test for determining if claims are barred by the Rooker-Feldman doctrine: "(1) the federal plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by [the] state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." Id. at 166.

The test set forth in Great Western was adopted after the decision in Exxon Mobil and takes into account the "independent claims" requirement of that decision.  The court in Great Western explained the second prong of the test: "[w]hen the source of the injury is the defendant's actions (and not the state court judgments), the federal suit is independent, even if it asks the federal court to deny a legal conclusion reached by the state court." Id. at 167. While the court of appeals in Great Western did not explicitly mandate that a threshold "independent claim" test be applied prior to the four-part test, it incorporated that concept from Exxon Mobil and Skinner into the four-part test itself. The Great Western test was developed to clarify the application of the Rooker-Feldman doctrine and replaced the "inextricably intertwined" test. Great Western simply breaks down the holding in Exxon Mobil, but does not change or replace it. Great Western, 615 F.3d at 166.

Debtors point to treatment of habeas corpus suit claims in an effort to show that the Great Western test is too broad. (ECF No.10 at 16.)  The issues here are not akin to habeas corpus claims which are specifically not subject to the Rooker-Feldman doctrine.  See Sumner v. Mata, 449 U.S. 539, 543-44 (1981) ("even a single federal judge may overturn the judgment of the highest court of a State" in adjudicating a petition for habeas corpus relief").  This argument, therefore, does not withstand scrutiny.

It is noteworthy that the facts of Madera are quite similar to those in the case at hand. While the court of appeals in Madera applied the prior "inextricably intertwined" test, its application of the Rooker-Feldman doctrine is illustrative of how circumstances such as this should be treated. In that case, the debtors refinanced their mortgage twice and defaulted on both mortgages. Madera, 586 F.3d at 230. Deutsche Bank, the assignee of the mortgage, obtained a default foreclosure judgment against the Maderas in state court. Id. The Maderas initiated bankruptcy proceedings and claimed that Ameriquest Mortgage Co., the originator of the loan, failed to disclose accurately the loan's terms and failed to respond to their QWR, thus violating the TILA and the RESPA. Id. at 231. Based upon these violations, the Maderas sought to rescind the loan. Id. The bankruptcy court dismissed their rescission claim on the ground that it was barred by Rooker-Feldman. Id. The court relied upon the now defunct "inextricably intertwined" test, which bars a lower federal court from reviewing a state court decision when "(1) the federal court must determine that the state court judgment was erroneously entered in order to grant the requested relief, or (2) the federal court must take an action that would negate the state court's judgment." Id. at 232. Since granting rescission would amount to a finding that no valid mortgage existed and would negate the foreclosure judgment because foreclosures depend upon the existence of a valid mortgage, the Court of Appeals for the Third Circuit held that the state

foreclosure judgment was "inextricably intertwined" with the claim and thus was barred by the Rooker-Feldman doctrine. Id. While the facts of Madera are similar to the case at hand, the "inextricably intertwined" test the court used in rendering that decision is no longer applicable. The four-part test used in Great Western is the current test for applying the Rooker-Feldman doctrine. Debtors' argument that Madera was incorrectly decided is irrelevant because Great Western articulates the current Rooker-Feldman test in the Third Circuit and when applied to the facts at hand bars the bankruptcy court from exercising jurisdiction.[8]

Decisions from other circuits are not binding precedent upon this court. The Great Western four-part test is the current test to be utilized by federal courts within the Third Circuit. See Laychock v. Wells Fargo Home Mortg., 399 F. App'x 716, 718 (3d Cir. 2010) (finding that the Rooker-Feldman doctrine barred a suit based upon "wrongful foreclosure" because granting the requested relief would require the court to determine the state court's judgment was erroneously entered); Knapper v. Bankers Trust Co. (In re Knapper), 407 F.3d 573 (3d Cir. 2005); Cooley v. Wachovia Mortg. Co. (In re Cooley), 365 B.R. 464 (Bankr. E.D. Pa. 2007); Stuart v. Decision One Mortg. Co., LLC (In re Stuart), 367 B.R. 541 (Bankr. E.D. Pa. 2007); see Gage v. Wells Fargo Bank, No. 12-1745, 2013 WL 1240838 (3d Cir. Mar. 28, 2013); Sabertooth, LLC v. Simons (In re Sabertooth, LLC), 443 B.R. 671 (Bankr. E.D. Pa. 2011); Mayeres v. BAC Home Loans, Nos. 10-44816, 11-1516, 2011 WL 2945833 (Bankr. D.N.J. July 21, 2011);

---

[8] Although the "inextricably intertwined" test utilized in Madera was replaced with the four-part Great Western test, the Rooker-Feldman doctrine would still have been applied in Madera because the four-part test would have been met. Numerous decisions within the Third Circuit, including district court and bankruptcy court holdings, applied the test set forth in Exxon Mobil even though they applied it before it was broken down into the four-part test by Great Western. The court will follow the clear law set by the Court of Appeals for the Third Circuit and adhered to by lower courts within the circuit and find that the Great Western test was correctly applied in this case and bars Debtors' claim for rescission. See Knapper v. Bankers Trust Co. (In re Knapper), 407 F.3d 573 (3d Cir. 2005); Cooley v. Wachovia Mortg. Co. (In re Cooley), 365 B.R. 464 (Bankr. E.D. Pa. 2007); Stuart v. Decision One Mortg. Co., LLC (In re Stuart), 367 B.R. 541 (Bankr. E.D. Pa. 2007).

Kaliner v. Mortg. Elec. Registration Sys., Inc. (In re Reagoso), Nos. 06-12961, 07-47, 2007 WL 1655376 (Bankr. E.D. Pa. June 6, 2007);[9]

### 3.    Statutory Plain Language and Congressional Intent

Debtors argue that the TILA allows a debtor to rescind a mortgage after a foreclosure judgment has been entered and thus original jurisdiction exists under the TILA for the district court to adjudicate their claim.   They argue that the plain language of the TILA allows the rescission they request and that Congress intended rescission to be available under the TILA after a foreclosure judgment has been entered.   The TILA does allow an obligor to rescind a security interest within three years of the transaction. 15 U.S.C. §1635(f).   Debtors point to language in the TILA that provides any security interest, including any security interests arising by operation of law, becomes void upon rescission. 15 U.S.C.  §1645(b).   Federal Reserve regulations provide that for the purposes of the right of rescission, the term "security interest" includes interests arising solely by operation of law. 12 C.F.R. §226.2(25).   Debtors argue that these statutes and regulations demonstrate congressional intent that the Rooker-Feldman doctrine does not apply in the context of rescission even after a foreclosure judgment in state court.

---

[9] Debtors correctly assert that there is currently a circuit split on the correct application of the Rooker-Feldman doctrine to cases involving federal suits filed after state foreclosure judgments, particularly those with TILA claims. Lower courts within the Second, Sixth, and Eleventh Circuits all applied the Rooker-Feldman doctrine to cases involving the TILA and concluded that TILA claims, including claims for rescission, are independent of state foreclosure judgments and the Rooker-Feldman doctrine does not preclude the adjudication of those claims by federal courts. See Capela v. J.G. Wentworth, LLC, No. CV09-882, 2009 WL 3128003, at *6 (E.D.N.Y. Sept. 24, 2009); Smith v. Encore Credit Corp., 623 F. Supp. 2d 910, 916-17 (N.D. Ohio 2008); Madura v. Countrywide Home Loans, Inc., No. 06-cv-2073-T-24, 2007 WL 4336094, at *9-10 (M.D. Fla. Dec. 7, 2007); Council v. Better Homes Depot, Inc., No. 04 CV 5620, 2006 WL 2376381, at *7-8 (E.D.N.Y. Aug. 16, 2006); In re Weinraub, 361 B.R. 586, 587 (Bankr. S.D. Fla. 2007). Other courts, including the Court of Appeals for the Third Circuit, have conversely held that TILA claims for rescission filed after a default foreclosure judgment are not independent of state foreclosure judgments and are barred by the Rooker-Feldman doctrine. See Knapper, 407 F.3d at 581; Cooley, 365 B.R. at 473; Stuart, 367 B.R. at 551; see Parker v. Potter, 368 F. App'x 945, 948 (11th Cir. 2010); Velardo v. Fremont Inv. & Loan, 298 F. App'x 890, 892 (11th Cir. 2008); Singleton v. Fifth Third Bank of W. Ohio (In re Singleton), 230 B.R. 533, 538 (B.A.P. 6th Cir. 1999); Powell v. LaSalle Bank Nat. Ass'n, No. 11-cv-0497, 2012 WL 896392, at *2-3 (S.D. Ind. Mar. 15, 2012); Carter v. Deutche Bank Nat. Trust Co., No. 10-797, 2010 WL 3074323, at *2 (E.D. La. Aug. 2, 2010); Rohr v. Home Loans Corp., No. 104CV01594, 2005 WL 2027684, at *3 (D. Colo. Aug. 22, 2005); McMahon v. Washington State Bank, No. 05-C-122, 2005 WL 1648204, at *2 (W.D. Wis. July 13, 2005).

Debtors, however, do not clearly articulate why a person's ability to invalidate a judgment that occurs by operation of law, like a mechanic's lien, has any effect on one's ability to invalidate a judgment entered by a court. (ECF No. 10 at 13.)  They point to the plain language of the statutes and regulations, as well as the changes in the regulations, which explicitly include interests arising solely by operation of law for the purposes of rescission, to show that Congress intended the option to rescind to extend to their situation. Id.  Debtors contend that applying the Rooker-Feldman doctrine and prohibiting rescission of the mortgage post-rescission would invalidate portions of the TILA and applicable regulations. Id. at 14.

Debtors construed the statutes and regulations too broadly in their analysis.  The TILA and the regulations promulgated pursuant to it do not evidence Congressional intent to allow a debtor to rescind a mortgage after a foreclosure judgment has been entered.  While the TILA is broadly written to allow security interests arising by operation of law to be rescinded, it makes no mention of allowing these interests to be rescinded after a foreclosure judgment has been entered.  Applying the Rooker-Feldman doctrine to bar a claim for rescission would not invalidate and reduce portions of the statute and regulations.  This case is somewhat convoluted because Debtors assert they are seeking to rescind the mortgage Debtors entered into during a refinancing, but what Debtors need to rescind or void is the default foreclosure judgment entered in the state court.  The statutes and regulations cited by Debtors do not apply here because the default foreclosure judgment did not arise under operation of law.  The plain language of the statute does not evidence an intent to allow rescission after the entry of a state court judgment.

28 U.S.C. § 1334, 15 U.S.C. §1635(b), and 15 U.S.C. §1640(a) do not grant the court jurisdiction to rescind the mortgage.  28 U.S.C. §1334(b) simply grants district courts the jurisdiction to hear bankruptcy claims arising under Title 11.  15 U.S.C. § 1635 outlines the right

to rescission of certain transactions and under what circumstances these transactions may be rescinded.  15 U.S.C. §1640 only outlines civil liability under the TILA.  Even with the general jurisdiction to hear claims under Title 11 arising under 28 U.S.C. §1334(b), the Debtors' rescission claim must still be properly analyzed under the <u>Rooker</u>-<u>Feldman</u> doctrine.

### 4.    Application of the <u>Great Western</u> Test

Debtors argue that even if <u>Great Western</u> was correctly decided, the bankruptcy court did not correctly apply it to the facts of the present case.  The <u>Great Western</u> four-part test was correctly applied by the bankruptcy court and bars Debtors from rescinding the mortgage.  For a claim to be barred under the <u>Rooker</u>-<u>Feldman</u> doctrine four prongs are considered: "(1) the federal plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by [the] state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." <u>Great Western</u>, 615 F.3d at 166.  Debtors admit in their brief that the first and third prongs of the test are satisfied because Debtors lost in state court and the state court judgment was rendered before the federal suit was filed. ECF No. 10 at 17.  Debtors contend that the second and fourth prongs of the test are not met. <u>Id.</u>  With respect to the second prong, Debtors contend that their rescission claim against JPMorgan does not arise from the state court default judgment because the injury occurred before the state court proceedings, thus leaving part two of the test unsatisfied.  They contend that part four of the test is not satisfied, but give no explanation as to why.  The bankruptcy court concluded that Debtors' injuries were caused by the state court foreclosure judgment, because the relief they were seeking would require the invalidation of the foreclosure judgment. Debtors contend, however, that the injuries resulted from JPMorgan's refusal or inability to provide accurate disclosures of the annual percentage rate and the finance charge at

the time of the refinancing, which are violations of the TILA[10]. Id. at 18.  Debtors argue that they

are not inviting the court to review and reject the state foreclosure judgment.

Here, the second prong of the test is satisfied because the state court judgment is the

requisite step in order for the creditor to obtain the remedy that constitutes the injury.  Debtors

are essentially attempting to avoid the foreclosure judgment through obtaining a rescission of the

refinanced mortgage.  While Debtors allege that JPMorgan, in its capacity as servicer of the

mortgage, committed TILA violations during the refinancing, this conduct is not the source of

injury; the injury is the foreclosure judgment. The federal rescission claim was filed by Debtors

after the state judgment was entered in an effort to avoid the foreclosure.  The fourth prong of the

test, which requires that the plaintiff invite the federal court to review and reject the state court

judgment, is met in the present case because it would be impossible to invalidate the underlying

mortgage without invalidating the state court judgment.  Since the state court default foreclosure

judgment requires the existence of a valid mortgage, a rescission of the mortgage would be

tantamount to invalidating the state court foreclosure judgment.  A favorable decision for

Debtors allowing rescission would prevent enforcement of the state court foreclosure judgment.

Madera, 586 F.3d  at 232.

The Court of Appeals for the Third Circuit has held that claims of this nature are barred

by the Rooker-Feldman doctrine.  The facts of Madera were almost identical and the court held

that the claim for rescission was barred. Madera, 586 F.3d  at 232 (plaintiff's claims for

rescission under TILA was found to be barred by the Rooker-Feldman doctrine); see Laychock,

---

[10] JPMorgan did not enter into the refinancing with Debtors. Ace closed the refinancing and WAMU was named the originator of the mortgage. Debtors allege that JPMorgan committed injuries during the refinancing even though it was not a party to the refinancing. 15 U.S.C. §1602(g), incorrectly cited as §1602(f) by the Debtors, does not make JPMorgan the creditor under TILA as the purchaser of the WAMU loan. The Purchase and Assumption Agreement JPMorgan signed did not transfer the liabilities of WAMU to JPMorgan, only the assets.  While JPMorgan is the successor to the mortgage as a result of the Purchase and Assumption Agreement, it explicitly did not become a successor to WAMU's liabilities.  These alleged TILA violations were not committed by JPMorgan and liability for WAMU's alleged violations does not flow through the Purchase and Assumption Agreement.

399 F. App'x at 718 (citing <u>Madera</u> and noting "[a]ny claim relying on allegations of wrongful foreclosure must be rejected under the <u>Rooker</u>-<u>Feldman</u> doctrine."); <u>Knapper</u>, 407 F.3d at 581 (3d Cir. 2005) (the federal claim was barred because in order to prevail on the federal claim, the state court judgment would have to be negated).  Here, to prevail, Debtors must argue the foreclosure was wrongful because the mortgage should be rescinded.  Bankruptcy and district courts within the Third Circuit have consistently applied the <u>Rooker</u>-<u>Feldman</u> doctrine to the detriment of plaintiffs seeking rescission after the entry of state foreclosure judgments, even in the face of allegations that the state court's actions were unconstitutional. <u>see</u> <u>Dougal v. Saxon Mortgage (In re Dougal)</u>, 395 B.R. 880, 889-90 (Bankr. W.D. Pa. 2008) ("<u>Rooker</u>-<u>Feldman</u> deprives the Court of subject matter jurisdiction and thereby bars a claim under TILA seeking rescission as a remedy when there has been a prior state court mortgage foreclosure judgment: rescinding the mortgage would have the effect of invalidating the state court foreclosure judgment.").  Courts have continued to follow this line of decisions even after the decision in <u>Great Western</u>. <u>See</u> <u>Washington v. Saxon Mortg. Servs. (In re Washington)</u>, 469 B.R. 587, 592-95 (Bankr. W.D. Pa. Mar. 7, 2012) (applying the <u>Great Western</u> four-part test to bar the review of a state court foreclosure judgment). Applying the <u>Great Western</u> test, this court concludes that neither it nor the bankruptcy court have subject-matter jurisdiction to grant the rescission requested by Debtors. For the reasons set forth above, the court concludes that it lacks subject-matter jurisdiction over Debtors' claims for rescission under the TILA.

### B.     FIRREA

Debtors argue that the bankruptcy court erred in finding certain of their claims were barred for failing to exhaust administrative remedies because the administrative process mandated by the FIRREA for claims against failed banks placed in receivership is

unconstitutional.  Debtors reason that the non-Article III courts do not have constitutional authority to render final judgments on the merits of those claims, citing to <u>Stern v. Marshall</u>, 131 S. Ct. at 2600. Since the issues before this court are purely questions of law, the court will conduct a de novo review. <u>Baroda Hill Invs., Ltd. v. Telegroup, Inc. (In re Telegroup, Inc.)</u>, 281 F.3d 133, 136 (3d Cir. 2002); <u>Wolser v. Joshua Slocum, Ltd. (In re Joshua Slocum, Ltd.)</u>, 109 B.R. 101, 103 (E.D. Pa. 1989) ("Issues of law [in a bankruptcy court report and recommendation] are subject to de novo review."). There are two aspects to this argument: first, whether the bankruptcy court has the authority to hear Debtors' claims at issue in this appeal and second, whether the FIRREA administrative claims process is constitutional.

### 1.  Bankruptcy Court Authority

Assuming Debtors are correct and the bankruptcy court did not have jurisdiction, this court may treat the order as a report and recommendation and apply de novo review. 28 U.S.C. § 157(c)(1) ("[t]he bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected."); <u>see</u> <u>Carr</u>, 493 B.R. at 466. Even if the bankruptcy court could enter a final judgment, this court would still apply de novo review to its decision on appeal. This issue is a question of law and as such is subject to de novo review by this court. The court will review the issue de novo. To the extent <u>Stern</u> would affect the bankruptcy court's authority to issue a final order on this matter, the court will consider the bankruptcy court's opinion and order as a report and recommendation and, having reviewed the issues raised de novo, will adopt them as this court's opinion and order.

### 2.  Constitutionality of the FIRREA Administrative Process

The matter is different with respect to the issue whether the FIRREA administrative process is constitutional. Debtors attempt to create a straw man in arguing the applicability of Stern, when, in fact, the facts and holding of Stern are inapposite to the statutory claims and review process set forth in the FIRREA, which provides a right for administrative or judicial review of the FDIC claims process. The FIRREA properly grants power to the FDIC to consider claims against failed banks in receivership without violating Article III of the Constitution. Tellado v. IndyMac Mortg. Servs., 707 F.3d 275, 279-81 (3d Cir. 2013).

The FIRREA created a procedure for addressing claims filed against failed depository institutions. See Praxis Props., Inc. v. Colonial Sav. Bank, SLA., 947 F.2d 49, 62-63 (3d Cir. 1991).  It provides that when the FDIC is appointed as the receiver of a failed institution, it succeeds to all "rights, titles, powers and privileges" of the failed institution and may operate and take over the assets of the institution. 12 U.S.C. §§1821(d)(2)(A)(i)-(B)(i).  The FDIC, as receiver, has the power to transfer assets and liabilities of the failed institution through purchase and assumption agreements. 12 U.S.C. §182(d)(2)(G)(i).  The FIRREA explicitly prevents any court from exercising jurisdiction over, "any claim relating to any act or omission of such institution or the Corporation as receiver." 12 U.S.C. §1821(d)(13)(D).  This is a jurisdictional bar, requiring claimants to first exhaust the administrative remedies of the FIRREA mandated under § 1821(d) before bringing a claim to federal court. Nat'l Union Fire Ins. Co. v. City Savings, F.S.B., 28 F.3d 376, 383 (3d Cir. 1994).  This jurisdictional bar has been characterized as "a statutory exhaustion requirement." Id.  The FIRREA provides for both administrative review and judicial review of the claims process. 12 U.S.C. § 1821(d)(7)(A).

The Court of Appeals for the Third Circuit has consistently held that the FIRREA is constitutional and does not violate Article III of the Constitution. See e.g., Rosa v. Resolution

Trust Corp., 938 F.2d 383, 396 (3d Cir. 1991). In a recent decision rendered subsequent to the Supreme Court decision in Stern, the Court of Appeals for the Third Circuit reaffirmed the validity of the statutory exhaustion scheme in the FIRREA. Tellado, 707 F.3d at 279-81. The court of appeals in Tellado found that the district court lacked subject-matter jurisdiction because the plaintiffs lodged a claim under the FIRREA for omission against the purchasing bank (OneWest) related to a failed depository institution (IndyMac). Id. at 280. The court, relying upon Benson v. JPMorgan Chase Bank, N.A., 673 F.3d 1207 (9th Cir. 2012), concluded that the plaintiffs' claim was jurisdictionally barred under the FIRREA because they failed to exhaust the administrative process. In so holding, the court of appeals in Tellado implicitly recognized the continuing validity of the FIRREA administrative exhaustion requirement. In spite of this precedent, Debtors claim that the Supreme Court's decision in Stern prevents application of the statutory exhaustion requirements.

The issue in Stern was whether a bankruptcy court had constitutional authority to issue a final judgment on a state law counterclaim of tortious interference. Stern, 131 S. Ct. at 2600. Stern, however, did not address a situation in which a statutory exhaustion requirement applied. The Court in Stern concluded that although the bankruptcy court had statutory authority to render a judgment on the counterclaim, it lacked the constitutional authority to do so. Id. at 2601. The Court stated that "Vickie's claim is a state law action independent of the federal bankruptcy law and not necessarily resolvable by a ruling on the creditor's proof of claim in bankruptcy." Id. at 2611. The Supreme Court specifically noted that its holding was a narrow one, limited to situations where a state common law action is raised as a counterclaim to a filed proof of claim. Id. at 2620. No such state common law claim is asserted in the present case.

Debtors are incorrect in arguing that Stern applies to their claims for damages under the TILA, which needed to be exhausted under the FIRREA. Debtors' over-expansive interpretation of the Court's decision is contradicted by the statutory framework in the FIRREA and the relevant facts in Stern. Claims decisions rendered in FDIC administrative proceedings are appealable for de novo review pursuant to the provisions of the Administrative Procedure Act, 5 U.S.C. §§ 701-06. 2 KENNETH M. LAPINE, DENNIS LASSILA, BURTON V. MCCULLOUGH, PAUL S. PILECKI, AND HAROLD WEISBLATT, BANKING LAW § 49.04[7] (Matthew Bender) (citing 12 U.S.C. § 1821(d)(6)(a)). This process allows decisions by the FDIC administrative law courts pertaining to FIRREA to be appealed to a district court as the statute allows. 12 U.S.C. § 1821(d)(6)(A)(ii); Nat'l Union Fire, 28 F.3d at 383. The party must first proceed through the FIRREA claims process before an appeal can be taken. Nat'l Union Fire, 28 F.3d at 383 (acknowledging that 12 U.S.C. § 1821(d)(13)(D) is characterized as a statutory exhaustion requirement that must be met before appeal pursuant to § 1821(d)(6)(A) may be taken). Without this statutory exhaustion requirement fulfilled, a doctrine which has long been held constitutional, federal courts may not exercise jurisdiction over the claim. Id. "The doctrine of exhaustion of administrative remedies is well established in the jurisprudence of administrative law." McKart v. United States, 395 U.S. 185, 193 (1969); Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50-51 (1938). Stern, on the other hand, considered whether a bankruptcy court could constitutionally render a final decision on a common law counterclaim. Stern, 131 S. Ct. at 2620. Unlike the common law counterclaims at issue in Stern, the present case involves claims that are subject by statute to an administrative review process under the FIRREA. 12 U.S.C. § 1821(d)(6)(A). Stern simply did not address the issue Debtors attempt to raise here, and is not applicable to the facts of this case.

Since the FIRREA administrative claims process is permissible under Article III of the Constitution and <u>Stern</u> does not prohibit the FDIC from exercising the authority statutorily provided it, Debtors were required to proceed through the administrative claims process mandated by the FIRREA before they could turn to this court for relief.  Because the claims for damages Debtors bring under the TILA involve "acts and omissions" of the failed institution (WAMU), a failure to bring those claims under the FIRREA bars the bankruptcy court and this court from exercising jurisdiction. 12 U.S.C. §1821(d)(13)(D); <u>see</u> <u>Tellado</u>, 707 F.3d at 281 (finding that district court lacked jurisdiction over claims that had not been administratively exhausted); <u>Praxis</u>, 947 F.2d at 63-64 (acknowledging the administrative exhaustion requirement in the FIRREA); <u>Tri-State Hotels, Inc. v. FDIC</u>, 79 F.3d 707, 712 (8th Cir. 1996) (stating that the FIRREA provides that courts only have jurisdiction over claims which have first been presented to the FDIC under the claims administration process). Because Debtors failed to pursue their claims by way of the administrative claims process with the FDIC to exhaustion, the bankruptcy court and this court lack jurisdiction to hear their claims and those claims were properly dismissed for lack of subject-matter jurisdiction. <u>National Union Fire</u>, 28 F.3d at 383.

### 3.    Recoupment

Debtors contend that the bankruptcy court erred in dismissing its claim for recoupment under the TILA, which was an alternative claim to the claims for monetary damages.  They argue that even if the TILA claims seeking a right of payment must proceed through the administrative claims process mandated by FIRREA, claims not seeking a right of payment (i.e. those for recoupment) must be heard by the bankruptcy court. Debtors' problem, however, is that this issue was not directly raised below. The bankruptcy court was able to discern only TILA claims for damages and rescission from a reading of Debtors' complaint, and consequently, did not

address any potential claim for recoupment. This court likewise does not read Debtors'

complaint to include expressly a claim for recoupment. To the extent that Debtors' complaint did

not specifically plead the asserted recoupment claims and the bankruptcy court did not rule on

them, this court cannot address them on appeal. Singleton v. Wulff, 428 U.S. 106, 120 (1976)

("It is the general rule, of course, that a federal appellate court does not consider an issue not

passed upon below."); Browner, 121 F.3d at 122.

Pennsylvania and federal courts do, however, acknowledge the common law doctrine of

recoupment. Cohen v. Goldberg, 720 A.2d 1028, 1030 (Pa. 1998) ("Although there is no

recoupment provision in the Bankruptcy Code, bankruptcy law recognizes the common law

doctrine of recoupment."). "The common law doctrine of recoupment provides an exception to

setoff in bankruptcy cases. Recoupment is the setting up of a demand *arising from the same*

*transaction* as the plaintiff's claim or cause of action, strictly for the purpose of abatement or

reduction of such claim." Univ. Med. Ctr. v. Sullivan (In re Univ. Med. Ctr.), 973 F.2d 1065,

1079 (3d Cir. 1992) (internal quotation omitted). "In proper form, a right of recoupment is

merely a defensive right that assists in the just and proper determination of the defendant's

liability." 5 ALAN N. RESNICK & HENRY J. SOMMER, EDS., COLLIER ON BANKRUPTCY § 553.10

(16th ed.). The Court of Appeals for the Third Circuit in University Medical Center construed the

"same transaction" requirement narrowly, acknowledging that "[f]or the purposes of recoupment,

a mere logical relationship is not enough; the 'fact that the same two parties are involved, and

that a similar subject matter gave rise to both claims, . . . does not mean that the two arose from

the 'same transaction.'" Cohen, 720 A.2d at 1030 (quoting Univ. Med. Ctr., 973 F.2d at 1081).

To the extent that a claim for recoupment can be characterized as an affirmative defense

that may not be barred by Rooker-Feldman, Debtors need to seek relief in the bankruptcy court.

It should be noted, however, that Debtor should address whether any potential liability for recoupment can be asserted against JPMorgan due to JPMorgan not assuming WAMU's liabilities under the purchase agreement. Since the recoupment claims were not explicitly raised in Debtors' initial complaint, the court need not address those claims now. To the extent the recoupment claims are not barred, they need to be raised as affirmative defenses to JPMorgan's claim, not as claims seeking damages.

## V.  Conclusion

For the reasons set forth above, the decision of the Bankruptcy Court is **AFFIRMED**. An appropriate order follows.

### <u>ORDER</u>

AND NOW, this 7th day of August, 2013, upon consideration of the notice of appeal, the submissions of the parties and the record, and for the reasons set forth above, **IT IS HEREBY ORDERED** that the appeal filed by Arthur Douglas Stewart and Christine Ann Stewart is **DENIED** and the order of the bankruptcy court dated May 21, 2012 is **AFFIRMED**. To the extent that the bankruptcy court lacked the authority to enter a final order, this court, after de novo review of the bankruptcy court's memorandum opinion and accompanying order, the record, and the submissions of the parties, hereby adopts the bankruptcy court's memorandum opinion and order as the opinion and order of the court, as supplemented by the foregoing memorandum opinion. The complaint filed at Adversary No. 10-2654 in Bankruptcy Case No. 10-26939 is hereby dismissed, but without prejudice to Debtors' ability to re-file the unexhausted claims in a proper forum.

The clerk shall mark this case closed.

BY THE COURT:

<u>/s/Joy Flowers Conti</u>
Joy Flowers Conti
United States District Judge